949 F.2d 332
 60 USLW 2356
 Hugh B. JOHNSON, Jr., as Personal Representative of the
Estate of Ben Johnson, Deceased, for and on Behalf
of Hugh B. Johnson, Jr. and Laura C.
Johnson, Beneficiaries,
Plaintiff-Appellant,
v.
UNITED STATES of America, DEPARTMENT OF INTERIOR, Defendant-Appellee.
 No. 90-8060.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 13, 1991.
Rehearing Denied Jan. 1, 1992.
 
 Stanley P. DeGory of Bonya and Douglass, Ind., Pa., for plaintiff-appellant.
 Carol A. Statkus (Richard A. Stacy, U.S. Atty., with her on the brief), Asst. U.S. Atty., Cheyenne, Wyo., for defendant-appellee.
 Before McKAY, Chief Judge, and BARRETT and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 Plaintiff, Hugh B. Johnson, Jr., on behalf of Hugh B. Johnson, Jr. and Laura C. Johnson, appeals from the district court's final order granting summary judgment in favor of Defendant, the United States of America. Plaintiff brought this action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-80, for the wrongful death of decedent, Ben Johnson. Plaintiff sought to recover damages from the United States alleging the National Park Service was negligent in undertaking the rescue of decedent.
 
 
 2
 The district court concluded Plaintiff's claim could not stand because he failed to establish a legal duty imposed upon the National Park Service. In addition, the district court found Plaintiff failed to present evidence of a breach of duty or proximate cause sufficient to put those elements of negligence at issue.
 
 
 3
 We affirm the summary judgment in favor of the United States on different grounds from those of the district court. Reviewing the record de novo, we conclude the discretionary function exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a), applies to the undisputed facts of this case. Plaintiff's complaint must therefore be dismissed for lack of subject matter jurisdiction. See Zumwalt v. United States, 928 F.2d 951, 952 (10th Cir.1991).
 
 I.
 
 4
 The material facts of this case are undisputed. On June 28, 1987, decedent, Ben Johnson, and three companions, Robin Macal, Daniel Feikin and David Wechner, hiked to the summit of Buck Mountain in Grand Teton National Park.[1] Macal and Wechner had acquired the necessary climbing permit from the Jenny Lake Ranger Station the previous afternoon. The four climbers had varying degrees of experience. Wechner was the designated leader of the party. Johnson was the least experienced, with no technical climbing experience whatsoever. Johnson and his companions began their ascent at approximately 8:00 a.m. via Buck Mountain's east ridge, a nontechnical route. The four climbers reached the summit at different times between 9:00 and 10:30 a.m.
 
 
 5
 After gathering at the summit, the group descended in pairs, at different times, via the east face, a nontechnical route regarded as relatively easy. The two most experienced climbers, Macal and Wechner, descended first. They reached Timberline Lake at approximately 12:00 noon, the entire descent taking approximately fifteen minutes. Although Johnson and Feikin began their descent along the east face shortly thereafter, they soon strayed south, entering more difficult and technical terrain. Unable to find their way back to the easier route, Johnson and Feikin attempted to descend the southern route. At some point, however, Feikin resolved he could go no further and remained on a ledge where he was in visual contact with Macal and Wechner waiting at Timberline Lake. Johnson, on the other hand, decided to continue his descent. After leaving the summit, Johnson was in occasional voice contact, but never in visual contact with Macal and Wechner.
 
 
 6
 At approximately 2:30 p.m. Macal and Wechner decided to summon help from the Park Rangers. Macal ran from Timberline Lake to the trailhead where he retrieved his vehicle and drove to the Moose Visitor's Center. Arriving at the visitor's center at approximately 4:30 p.m., he approached Ranger James Springer and informed him that Johnson and Feikin were off course and stuck, but that he believed there was a ranger in the area. At this point Macal was unaware, and therefore unable to report, that at approximately 3:15 p.m. Johnson had fallen on a hard snowslope, crashed into rocks and sustained a serious head injury and lacerations. Upon receiving Macal's information, Springer made radio contact with Ranger Randy Harrington, who had been in the vicinity of Buck Mountain, to determine whether he knew of any climbers in distress. Ranger Harrington reported that he had encountered four climbers descending Buck Mountain and that they were walking through Death Canyon. After talking with Harrington, Ranger Springer told Macal he should return to Whitegrass Trailhead to wait for his companions.
 
 
 7
 Macal returned to the trailhead and remained in the area until approximately 8:45 p.m. when Wechner arrived from Timberline Lake. After Wechner reported he had not seen Johnson and that Feikin was still stranded on the ledge, Macal realized the communication between Rangers Springer and Harrington had been erroneous.[2] Wechner and Macal then drove to the Moose Visitor's Center where they told Ranger Northrup about the previous miscommunication. They informed him Feikin had been on the same ledge for over four hours and Johnson had not been seen since earlier in the day. Both Wechner and Macal were still unaware that Johnson was injured. Northrup contacted Ranger Peter Armington, the Jenny Lake District search and rescue (SAR) coordinator.
 
 
 8
 Ranger Armington consulted with his SAR team[3] concerning a possible rescue effort. At approximately 9:30 p.m., Armington decided to send climbing rangers Harrington and Larsen to Buck Mountain to retrieve Feikin from the ledge and to look for Johnson. The rangers reached Feikin in the early morning hours, but were unable to locate Johnson. A helicopter search was initiated at first light, 6:15 a.m. Johnson's body was located approximately twenty minutes later in a melt pool near Timberline Lake. Johnson had died from hypothermia at approximately 10:30 p.m. the previous night.
 
 
 9
 Plaintiff alleges that Ben Johnson would not have died but for the Park Service's negligent failure to: (1) adequately regulate recreational climbing activity in Grand Teton National Park; (2) initiate a rescue effort after Macal's initial report; and (3) conduct a reasonable rescue effort after Macal's second report. In response to these allegations, Defendant filed a motion to dismiss, or, in the alternative, for summary judgment, asserting as a matter of law: (1) Plaintiff's action is jurisdictionally barred by the discretionary function exception to the FTCA, 28 U.S.C. 2680(a); and (2) the United States had no legal duty to rescue Ben Johnson. We review these issues de novo. Oberndorf v. City and County of Denver, 900 F.2d 1434, 1437 (10th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). Because we conclude the discretionary function exception deprived the district court of jurisdiction, we do not address the propriety of the district court's summary judgment rulings regarding legal duty, breach of duty or proximate cause.
 
 II.
 
 10
 The FTCA authorizes civil suits against the United States
 
 
 11
 for money damages ... for injury or loss of property, or personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
 
 
 12
 28 U.S.C. § 1346(b). This broad waiver of sovereign immunity is limited, however, by the discretionary function exception, which prohibits any claim against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. § 2680(a) (emphasis added). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Application of this exception is therefore a threshold issue--a jurisdictional issue which precedes any negligence analysis. See Miller v. United States, 710 F.2d 656, 662 (10th Cir.), cert. denied, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983).
 
 
 13
 This circuit applies the principles set forth in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), to guide its application of the discretionary function exception. Zumwalt, 928 F.2d at 953; Boyd v. United States ex rel. U.S. Army, Corps of Eng'rs, 881 F.2d 895, 897 (10th Cir.1989). We first consider whether the challenged action "is a matter of choice for the acting employee." Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958. If a statute, regulation, or policy prescribes a specific course of conduct, then an employee must "adhere to the directive" and no discretion is involved. Id. If, however, the challenged action is discretionary, we must then determine whether it is of the kind Congress intended to shield through the exception. Id. The Court concluded that Congress intended to shield only those "governmental ... decisions based on considerations of public policy"--decisions " 'grounded in social, economic and political policy.' " Id. at 537, 108 S.Ct. at 1959 (quoting Varig, 467 U.S. at 814, 104 S.Ct. at 2765). Accordingly, the discretionary function exception will not bar a negligence claim if the government's "policy leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment." Id. at 546-47, 108 S.Ct. at 1964.
 
 
 14
 Interestingly, no federal court has been asked to apply the discretionary function exception to circumstances similar to those presented here. Therefore, the issue of whether the National Park Service's climbing regulation and rescue decisions in Grand Teton National Park are shielded from liability is one of first impression.[4] We do not approach this issue lightly[5]--"[e]xceptions to the FTCA are to be narrowly construed." Miller, 710 F.2d at 662. For that reason, we must carefully apply the Berkovitz analysis[6] to the unique facts of this case, examining separately Plaintiff's claims regarding (1) regulating climbing activity, and (2) initiating and conducting rescue efforts. We examine the regulation claim first.
 
 A.
 
 15
 Plaintiff challenges, inter alia, Park Service decisions not to require additional warnings regarding the potential danger of mountain climbing, not to require safety equipment use, not to test the competency of each mountain climber, and not to "clear" the mountains of all climbers before dark. They assert that these decisions regarding the nature and extent of mountain climbing regulations in Grand Teton National Park do not invoke the discretionary function exception in light of this court's decision in Boyd. We disagree.
 
 
 16
 By statute, the Park Service is directed to
 
 
 17
 promote and regulate the use of ... national parks ... by such means and measures as conform to the fundamental purpose of the said parks ... which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.
 
 
 18
 16 U.S.C. § 1 (1988) (emphasis added). Grand Teton National Park is to be administered in accordance with this general mandate. Id. § 406d-1. According to the affidavit of Jack Stark, Superintendent, Grand Teton National Park, no federal statutes or regulations apply to the National Park Service or to Grand Teton National Park which specify how mountain climbing should be regulated. The Park Service has never promulgated a formal mountain climbing policy or climbing regulations. The Park does, however, require climbers to obtain a permit before departing on a climb. The purpose of the permit system is to educate climbers via face-to-face ranger contact. When a permit is requested, rangers attempt to evaluate the climbers' capabilities, and suggest alternative climbs if appropriate. Rangers have no authority, however, to prohibit climbers from taking a particular route.
 
 
 19
 Within this broad statutory/regulatory framework, we first examine Plaintiff's assertion that Park Service decisions regarding climbing regulation are not insulated from liability. Plaintiff concedes these decisions involve an exercise of judgment or choice, and thereby satisfy the first Berkovitz prong. No statute, regulation, or policy specifically prescribes a course of action for the National Park Service to follow. Decisions as to the extent or nature of mountain climbing regulation are truly the product of the Park Service's independent judgment--they are discretionary. See Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958.
 
 
 20
 Plaintiff argues, however, that these regulatory decisions fail the second prong of Berkovitz--they do not implicate social, economic, or political policy considerations. To the contrary, Superintendent Stark asserts that each of Plaintiff's contentions have been considered, but were rejected for the following social and economic policy reasons: (1) the inherent dangers of mountain climbing are patently obvious; (2) both manpower and economic resources should be conserved to preserve availability during emergency situations; (3) it would be impractical if not impossible to test competency, monitor equipment use, or "clear" the mountain given the limited available manpower and economic resources; and (4) many Park visitors value backcountry climbing as one of the few experiences free from government regulation or interference. Plaintiff has presented no evidence to dispute Superintendent Stark's assertions. We conclude that decisions if, when and how to regulate mountain climbing in Grand Teton National Park go to the essence of the Park Service's judgment in maintaining the Park according to the broad statutory directive. By their very nature, these decisions involve balancing competing policy considerations pertaining to visitor safety, resource availability, and the appropriate degree of governmental interference in recreational activity. The Park Service's actions, insofar as they relate to the regulation of mountain climbing in Grand Teton National Park, are therefore shielded from judicial review by the discretionary function exception.
 
 
 21
 Plaintiff's failure to warn claim[7] should be analyzed separately from the alleged failure to adequately regulate mountain climbing. Zumwalt, 928 F.2d at 955. However, as in Zumwalt, Plaintiff mistakenly contends that Boyd places any failure to warn outside the scope of the discretionary function exception. To the contrary, a decision not to warn "still may be a policy decision or part of a policy decision protected by the discretionary function exception." Id. (emphasis added).
 
 
 22
 In Boyd, the alleged failure of the Army Corps of Engineers to warn swimmers of potential dangers was not shown to be part of the Corps' zoning decision to dedicate part of a lake to unrestricted use. In other words, "the government's failure to warn was not connected to the policy decision which created the hazard." Zumwalt, 928 F.2d at 955. Unlike the decision not to warn in Boyd, the record here indicates the Park Service's decision not to place additional warnings in the Teton Range, whether explicit or implicit, was part of the overall policy decision to limit governmental regulation of climbing, educate climbers via the permit system, and preserve the Park in accordance with the statutory directive. This decision cannot be divorced from the overall policy not to engage in strict regulation of climbing activity in the Park. "A decision that is a component of an overall policy decision protected by the discretionary function exception also is protected by this exception." Zumwalt, 928 F.2d at 955; see also Weiss, and Miller. In the absence of facts indicating the failure to post additional warnings was a distinct, nonpolicy decision, we conclude that Plaintiff's failure to warn claim is barred by the discretionary function exception.
 
 B.
 
 23
 We now turn to the issue of whether Park Service decisions if, when and how to conduct rescue operations are shielded by the discretionary function exception. Fundamentally, Plaintiff alleges that the National Park Service was negligent in its response to Ben Johnson's plight. However, the dispositive threshold issue is not whether the Park Service was negligent, but rather what was the nature of the Park Service's decisions. In response to this issue, Plaintiff baldly asserts that "[t]he rangers [sic] negligent actions in responding to Macal and Wechner 'simply did not involve the exercise of [social, economic and political] judgment,' " and, therefore, do not invoke the discretionary function exception. A closer analysis is in order.
 
 
 24
 Again, we must first determine whether the challenged action "is a matter of choice for the acting employee." Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958. In addition to the general statutory directive quoted above, the Secretary of the Interior is authorized, not mandated, to assist National Park visitors in emergencies. 16 U.S.C. § 12 (1988). No statute imposes a duty to rescue, nor are there regulations or formal Park Service policies which prescribe a specific course of conduct for search or rescue efforts. Instead, the decision if, when or how to initiate a search or rescue is left to the discretion of the SAR team. Therefore, the rangers must act without reliance upon fixed or readily ascertainable standards when making a search or rescue decision in the field. Plaintiff wisely concedes that these decisions are discretionary and therefore satisfy the first prong of Berkovitz.
 
 
 25
 Plaintiff contends, however, that Park Service rescue responses do not involve the kind of discretionary judgment protected by the discretionary function exception. We therefore focus our attention on the second prong of the Berkovitz analysis--whether the decision if, when or how to initiate a search or rescue is the kind of decision the discretionary function exception was designed to shield. Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958. Congress intended that this exception protect from judicial second-guessing only those governmental actions and decisions based on public policy considerations. Id. at 536-37, 108 S.Ct. at 1959. The key to a proper construction of the discretionary function exception thus lies in the determination of whether a governmental decision is "grounded in social, economic, and political policy." Varig, 467 U.S. at 814, 104 S.Ct. at 2765 (emphasis added).
 
 
 26
 Governmental actions outside the regulatory context may be protected by the discretionary function exception. Allen, 816 F.2d at 1422 (citing Varig, 467 U.S. at 810-14, 104 S.Ct. at 2762-65, and Dalehite, 346 U.S. at 31, 73 S.Ct. at 965). Furthermore, "the nature of the conduct, rather than the status of the actor ... governs whether the discretionary function exception applies in a given case." Varig, 467 U.S. at 813, 104 S.Ct. at 2764. The fact that the rangers, as employees, make nonregulatory search and rescue decisions is therefore inconsequential to our determination of whether those decisions are policy judgments. The nature of the rescue decision process is the critical inquiry: Do Park Service search and rescue decisions simply involve weighing safety considerations under an established program or do they involve the balancing of competing policy considerations?
 
 
 27
 Park Service search and rescue decisions are not guided by formal standards. Yet, these decisions are not arbitrary. The record demonstrates that Park rangers make individual search and rescue decisions based on the following considerations:
 
 
 28
 (1) Safety--It is a primary objective of the Park Service to protect the safety of both the visitors and the rangers. For this reason the rangers consider a variety of factors, including but not limited to, the nature of the situation reported (e.g., lost, overdue, off route, injured),[8] the weather, the nature and difficulty of the terrain, the number of climbers, and the presence or absence of a leader at the scene.
 
 
 29
 (2) Human resources--The Park Service has limited manpower resources which it must allocate and deploy carefully. In June 1987, Grand Teton National Park had 17,197 visitors per day. Hikers and climbers accounted for 1,009 of these daily visitors. During this same period, forty seasonal and twelve permanent rangers (including the eighteen search and rescue rangers in the Jenny Lake Subdistrict) patrolled 332,331 acres--over 519 square miles of extremely rugged terrain.
 
 
 30
 (3) Economic resources--The Park Service has limited economic resources which it must use wisely. Search and rescue efforts are expensive. For example, a helicopter search costs $750 per hour.
 
 
 31
 (4) Governmental interference--The climbing community appreciates the inherent danger of the sport and is perceived to value the individual freedom of a backcountry experience.
 
 
 32
 We need not find evidence in the record that the rangers in this instance considered each of the identified policy factors. The discretionary function exception may apply in the absence of a conscious decision, so long as the Park Service's search and rescue program allowed room for the rangers to make independent policy judgments. See Berkovitz, 486 U.S. at 546, 108 S.Ct. at 1964; Richardson v. United States, 943 F.2d 1107, 1111 (9th Cir.1991); Sea-Land Serv., Inc. v. United States, 919 F.2d 888, 892 (3d. Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991). The record before us adequately supports our conclusion that the rangers' decision if, when or how to rescue inherently involves the balancing of safety objectives[9] against such practical considerations as staffing, funding and minimizing government intrusion. As such, these decisions are grounded in social and economic policy, and thus are shielded from liability under the FTCA discretionary function exception.
 
 
 33
 Finally, Plaintiff seems to argue that even if the exception protects the decision if, when or how to rescue, the initial interview/communication stage is not protected. To attempt to separate the rangers' information gathering activity from the ultimate rescue decision is, however, to elevate form over substance. The gathering of information from an individual reporting a potential problem and the communication between rangers is inextricably tied to the rescue decision. The ultimate decision is necessarily based upon this information. With regard to each reported incident, Park rangers are in the unique position to assess the quantity and quality of information offered. No meaningful way exists for this court to consider the nature of these acts apart from the total rescue decision.[10]
 
 
 34
 We reiterate, "[a] decision that is a component of an overall policy decision protected by the discretionary function exception also is protected by this exception." Zumwalt, 928 F.2d at 955; see also Weiss, and Miller. The rangers' initial investigatory conduct is a component of the overall policy decision; as such, it cannot by itself support Plaintiff's suit under the FTCA. See generally Gray v. Bell, 712 F.2d 490, 515-16 (D.C.Cir.1983) (allegations of improper preindictment investigation are insufficiently separable from discretionary decision whether to prosecute), cert. denied, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); Payton v. United States, 679 F.2d 475, 482 (5th Cir.1982) (the manner and degree of consideration with which the Parole Board examines a prisoner's records is inextricably tied to its ultimate discretionary decision whether to grant parole).
 
 III.
 
 35
 After careful examination of the record, we find nothing to contradict the government's evidence that Park Service search and rescue decisions are discretionary decisions requiring rangers to balance competing policy considerations.[11] In opposing the government's summary judgment motion, Plaintiff had the burden of presenting evidence that would put in issue the discretionary nature of these decisions. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Plaintiff has failed to meet this burden.
 
 
 36
 We recognize that in Plaintiff's view this is a harsh end. However, Plaintiff's entire case rests on the assertion that Park Service personnel could have communicated more accurately and responded more quickly. While this assertion may be true (i.e., the rangers' interview and response may have deviated from standards against which liability is measured where liability is available) it is not sufficient to establish FTCA liability. Allen, 816 F.2d at 1424. Factual issues concerning negligence are irrelevant to the threshold issue whether the officials' actions are shielded from liability by the discretionary function exception. Id. at 1421. The Park Service's conduct involved the permissible exercise of policy judgment, therefore governmental immunity is preserved under 28 U.S.C. § 2680(a) "whether or not the discretion involved be abused."
 
 
 37
 In summary, we conclude the district court properly granted summary judgment. The record reveals no disputed material facts as to the discretionary nature of the Park Service's actions. Plaintiff has confused negligence with immunity--to adopt the argument would be to jeopardize the Park rangers' autonomy to make difficult, individualized search and rescue decisions in the field. We seriously doubt Congress intended to expose these decisions to the second guessing of courts far removed from the exigencies of the moment. Plaintiff's negligence claims are therefore barred by the discretionary function exception to the FTCA. The district court's grant of summary judgment in favor of the United States is AFFIRMED.
 
 
 
 [1]
 Buck Mountain is the seventh highest peak in the Teton Range, rising to an elevation of 11,938 feet above sea level and 5,729 feet (approximately one mile) above the valley floor
 
 
 [2]
 The four climbers Ranger Harrington reported seeing were Jeff McMullen, Anne Petroni, Macal and Wechner. Ranger Harrington mistakenly assumed that McMullen and Petroni were part of the Wechner group
 
 
 [3]
 The SAR team is a group of experienced climbing rangers, which to the extent practicable patrols the rugged backcountry climbing terrain. In June 1987 there were eighteen search and rescue rangers in the Jenny Lake Subdistrict
 
 
 [4]
 A review of case law addressing the scope of the discretionary function exception reveals that the cases typically fall into one of two broad categories: alleged negligence in program design/construction (technical decisions requiring economic, social, or political judgments such that the exception is applicable) or alleged negligence in failure to warn of a hazardous condition (safety considerations under an established policy such that the exception is not applicable). Compare Weiss v. United States, 787 F.2d 518 (10th Cir.1986), and Miller, with Boyd. This case does not fall squarely within either category
 
 
 [5]
 See Allen v. United States, 816 F.2d 1417, 1424-25 (10th Cir.1987) (McKay, J., concurring) (concern that the discretionary function exception has been interpreted to apply "in all but the most trivial of matters"), cert. denied, 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988)
 
 
 [6]
 While characterized as the Berkovitz analysis, the contours of the discretionary function exception evolved from three important United States Supreme Court decisions: Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); and Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). See Kennewick Irr. Dist. v. United States, 880 F.2d 1018, 1022-25 (9th Cir.1989) for an excellent overview of this evolution
 
 
 [7]
 Try as he might, Plaintiff cannot legitimately characterize this case as a Boyd-type "failure to warn" case. The record makes it abundantly clear that the basis of Plaintiff's suit is the alleged negligent failure to rescue. In fact, the record indicates that a warning was posted at the Buck Mountain trailhead informing climbers of the dangers of snowslopes--the specific danger encountered by Ben Johnson
 
 
 [8]
 Because it is not uncommon for climbers to be overdue, unaccounted for, or off route, it is not Park policy to initiate a search or rescue effort based on a report that a climber is overdue, unaccounted for, or off route, or simply because another climber demands one
 
 
 [9]
 Contrary to Plaintiff's argument, the fact that visitor safety is a primary Park Service objective does not make search and rescue decisions any less discretionary, or remove them from the discretionary function exception
 
 
 [10]
 While a "lost person questionnaire" form was mentioned by some of the rangers in their deposition testimony, nothing in the record indicates that this form was adopted by the Park Service for use by all rangers during the interview stage of a search and rescue decision. Consequently, this form fails to constitute a sufficient fixed or readily ascertainable standard by which this court could evaluate the rangers' investigatory conduct apart from the ultimate rescue decision
 
 
 [11]
 The record in this case may have been more helpful to the court had both counsel devoted more time and effort developing the facts and less time and effort squabbling with each other