**Bonita M. KOCH, Executrix of the Estate of Ralph E. Korn, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Pagnotti Coal Company, and Tully Drilling Company, Defendants.**

Civ. No. 3:CV–92–0685.

United States District Court, M.D. Pennsylvania.

March 3, 1993.

Thomas L. Cooper, Gilardi & Cooper, P.A., Pittsburgh, PA, for plaintiff.

John A. Morano, Asst. U.S. Atty., Scranton, PA, for defendant U.S.

Jeffrey B. Rettig, Thomas, Thomas & Hafer, Harrisburg, PA, for defendant Pagnotti Coal Co.

Robert A. Seiferth, Liebert, Short & Hirshland, Williamsport, PA, for defendant Tully Drilling Co., Inc.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiff Bonita M. Koch filed this wrongful death action as Executrix of the Estate of Ralph E. Korn, deceased.[1] Korn sustained fatal injuries on May 24, 1991, while operating a pickup truck on an abandoned strip-mining road on property owned by the Pagnotti Coal Company (Pagnotti Coal) in Centralia, Columbia County, Pennsylvania. Korn was injured when the pickup truck struck a standpipe protruding from the center of the road. Plaintiff alleges that the standpipe had no markers or warning devices attached to it and was obscured from view.

---

1. Koch was appointed Executrix by the Register of Wills of Schuylkill County, Pennsylvania.

The standpipe was connected to a borehole[2] drilled as part of a project to monitor emissions from the Centralia underground mine fire. The Centralia Underground Mine Fire Exploratory Drilling Project (the "project") was an effort on the part of the United States Office of Surface Mining Reclamation and Enforcement (OSM) to gather data on the fire and assess the seriousness of the threat posed to area residents. (See: Record Document No. 16, exhibit "C", paras. 3–7)

Permission to install standpipe BH–34 was granted to the federal government by the property owner, Pagnotti Coal, in an agreement dated August 23, 1979. The agreement provided, in relevant part, that Pagnotti would refrain from activities which would interfere with or disturb the government's work on the project and that OSM would restore the premises to substantially the same condition as before, when its work was completed. (Record Document No. 16, exhibit "E")

The location and placement of the boreholes was determined by OSM employees. Actual drilling of the boreholes and installation of the attached standpipes was performed by an independent contractor retained by the government, Tully Drilling Company (Tully Drilling). The standpipe which Korn's pickup struck was installed in September, 1982 by Tully Drilling.

OSM monitored emissions from 189 boreholes for eight months, from August, 1982 to March, 1983. At the conclusion of OSM's monitoring program, the boreholes and monitoring equipment were made available to the Pennsylvania Department of Environmental Resources (PaDER) for continued monitoring. PaDER has used the boreholes to monitor the temperature of the underground fire.

Its conduct is not in question, and it is not a party to this action at this time.[3]

Plaintiff asserts a claim against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680,[4] and claims against defendants Tully Drilling and Pagnotti Coal[5] under state tort law. Plaintiff alleges that the OSM was negligent in positioning and installing the standpipe and in failing to inspect the premises to keep them safe after the installation.

Before the court is a Rule 12(b)(1) motion by the United States to dismiss for lack of subject matter jurisdiction, or in the alternative, for summary judgment (Record Document No. 7). The United States argues that plaintiff's claim against it is barred by the discretionary function exception to the FTCA, codified at 28 U.S.C. § 2680(a).[6] Both plaintiff and Pagnotti Coal oppose the motion. The United States supplemented its motion with a statement of material facts (Record Document No. 16) in response to which the plaintiff filed a counter-statement (Record Document No. 26). The United States also supplemented its motion with an affidavit from David G. Simpson who served as Chief of the Wilkes–Barre Field Office of the Untied States Department of the Interior, Bureau of Mines from November 16, 1980 to March 21, 1982.

Pagnotti Coal did not file a response to the statement of material facts filed by the United States. Nor did it join in the counter-statement of facts filed by plaintiff. It, therefore, is deemed to have admitted as undisputed the facts stated in the government's statement for purposes of ruling on the government's motion. (Local Rule 401.4)

Plaintiff requests denial or continuance of the government's summary judgment motion

---

**2.** The standpipe was designated BH–34 (a reference to borehole 34).

**3.** PaDER was originally named a defendant, but plaintiff subsequently withdrew all claims against it. (See: order dated August 18, 1992)

**4.** Jurisdiction exists under 28 U.S.C. § 1346(b). Plaintiff has exhausted her administrative remedies. 28 U.S.C. § 2675(a).

Although the activities being challenged were carried out by the OSM, the United States is

properly named as the defendant under the FTCA. 28 U.S.C. § 2679.

**5.** *Tully Drilling was added as a defendant with the filing of plaintiff's amended complaint.* (Record Document No. 14)

**6.** The United States raised another ground for dismissal in its motion as well, the Contractor Exclusion, 28 U.S.C. § 2671(a), but subsequently withdrew that ground.

pursuant to Fed.R.Civ.P. 56(f) on the grounds that it was filed prematurely before adequate opportunity for discovery on key issues. (Record Document No. 25, p. 12) In support of her request, plaintiff submits an affidavit from counsel, Marcia L. Cooper, Esq., detailing discovery allegedly necessary to flesh out factual issues.

For the reasons discussed below, we will grant the United States' motion to dismiss for lack of subject matter jurisdiction. The United States' motion for summary judgment is denied as moot. Plaintiff's request for additional time to conduct discovery is denied on the same ground.

## DISCUSSION

### Rule 12(b)(1) standard

The basis for the United States' motion for dismissal on jurisdictional grounds is the principle that federal courts do not have jurisdiction over claims asserted against the United States if an exception to the FTCA applies such that its waiver of sovereign immunity cannot be invoked. *Smith v. Johns–Manville Corp.*, 795 F.2d 301, 306 n. 8 (3d Cir.1986).

■■■ The United States' motion is a factual attack on the basis for federal jurisdiction. It relies on affidavits and documentary evidence as support for its contention that jurisdiction does not exist because the discretionary function exception to the FTCA applies. In such cases, the trial court is free to weigh the evidence and satisfy itself as to the existence of subject matter jurisdiction. *International Association of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir.1982).

■■■ Although courts "enjoy substantial procedural flexibility" in ruling on jurisdictional challenges, *Berardi v. Swanson Memorial Lodge No. 48*, 920 F.2d 198, 200 (3d Cir.1990), they should proceed cautiously in dismissing claims for lack of subject matter jurisdiction at an early stage if relevant facts are in dispute and pertinent discovery has not been concluded. *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 892 (3d Cir.1977). Dismissal is appropriate only if the record establishes that plaintiff had an opportunity to present

facts by affidavit or deposition or in an evidentiary hearing after the jurisdictional challenge arose and either exercised or waived that opportunity.

Here, the plaintiff did not request an evidentiary hearing or the opportunity for additional discovery to assist her in responding to the Rule 12(b)(1) motion. Nor has the United States requested an evidentiary hearing. There being no request before the court for an evidentiary hearing, and no contention by the parties that the jurisdictional issues are not now ripe for disposition, there is no reason not to rule on the motion to dismiss at this time.

■■■ Rule 12(b)(1) jurisdictional issues are decided by the court, even if they involve questions of fact. When the court's subject matter jurisdiction is under attack "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen, supra*, 549 F.2d at 891. No presumption of truthfulness attaches to the allegations in plaintiff's complaint, and the existence of disputed material facts does not preclude the court from evaluating for itself the merits of plaintiff's claim that a basis for federal jurisdiction exists. Although plaintiff bears the burden of proof on this issue, the burden is a lesser one than the one which must be met at trial. *Id.* at 891–92.

■■■ When a defendant supports its attack on jurisdiction with supporting affidavits, the plaintiff has the burden of responding to the facts so stated. A conclusory response or a restatement of the allegations of the complaint is not sufficient. *Machinists & Aerospace Workers, supra*, 673 F.2d at 711. The plaintiff must adduce facts which

> meet and controvert the facts asserted by the defendant. If the plaintiff does not meet and controvert the defendant's factual assertions by affidavits or other sworn proofs, then the district court must determine whether it has subject matter jurisdiction based upon the factual context presented by the defendant.

*Id.* at 711–12.

■■■ If, on the other hand, the plaintiff's and the defendant's sworn proofs raise a

disputed issue of material fact, the court should permit the case to proceed to a trial in which the contested jurisdictional issues and the issues on the merits are both resolved. *Id.* at 712.

Here, the parties are in agreement on many, if not all, of the essential facts on which our decision turns. Allowing further time for discovery would not alter the facts on which the parties now agree or change the ultimate result.

*Discretionary Function Exception*

The FTCA operates as a waiver of the sovereign immunity of the United States from civil actions for money damages on claims "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

■ The exception on which the United States relies, the discretionary function exception, exempts claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The United States is immune from all conduct within the purview of this exception regardless of whether the agents or employees involved committed an abuse of discretion or acted negligently. *USF & G v. United States*, 837 F.2d 116, 120 (3d Cir.), *cert. denied*, 487 U.S. 1235, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988). Whether the exception applies is a threshold determination which precedes any analysis of the alleged negligence. "Factual issues concerning negligence are irrelevant to the threshold issue whether the officials' actions are shielded from liability by the discretionary function exception." *Johnson v. United States, Department of the Interior*, 949 F.2d 332, 340 (10th Cir.1991).

■ Conduct is not discretionary unless it involves an element of judgment or choice. The exception cannot apply if a federal statute, regulation, or policy "specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). If the conduct being challenged as the cause of plaintiff's harm "cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the ... exception to protect." *Id.*

■ If the "challenged conduct involves an element of judgment," the court's next line of inquiry is whether the judgment exercised is the kind that the exception was designed to protect. Correctly construed, the exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 536–37, 108 S.Ct. at 1958–59.

■ This requirement does not, however, limit the exception solely to planning functions. *United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Any decision which balances competing considerations or identifiable policy factors, such as budgetary constraints, safety concerns, allocation of limited resources, etc. may be discretionary. *Johnson, supra*, 949 F.2d at 339.

■ Discretionary decisions are not confined to a particular job category or type. The focus is on the nature of the conduct under attack, not on the job title or level of the federal employee involved. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense, (Varig Airlines)*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984).

■ The line is drawn at operational conduct. Acts carrying out policy decisions which do not, of themselves, involve the exercise of discretion or which involve what has been called "ordinary discretion" are not exempt. Driving an automobile is an example of an act involving ordinary discretion. "Although driving requires the constant exercise

of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." *Gaubert, supra,* —— U.S. at —— n. 7, 111 S.Ct. at 1275 n. 7, 113 L.Ed.2d at 348 n. 7. Only decisions susceptible to "policy analysis" are protected by the exception. *Id.*

▇ The exception does not apply if the conduct in question violated the United States Constitution, a federal statute or agency regulation. Such conduct cannot be discretionary under the courts' analysis of the exception. Federal employees do not have discretion to violate mandatory requirements, and conduct which does so is actionable under the FTCA. *Berkovitz, supra,* 486 U.S. at 543, 108 S.Ct. at 1962. If the plaintiff alleges the violation of a specific mandatory directive, the exception does not apply. *Id.* at 544, 108 S.Ct. at 1962.

*Decisions and conduct at issue*

The issue before us at this time is not whether OSM was negligent. Our sole inquiry is whether plaintiff has overcome the discretionary function exception by demonstrating facts which counter the facts established by defendant through sworn statements and documentary evidence, and which are sufficient to satisfy the jurisdictional requirement for application of the FTCA at this stage. See: *Gaubert, supra.*

At least four decisions made by OSM have been identified as the possible object of the discretionary function exception: 1) the decision by OSM mining engineers to place BH–34 in the center of an abandoned stripmining road; 2) the decision not to place warning lights or other signals on or near BH–34; 3) the decision to delegate responsibility for actual installation of BH–34 and warning devices to Tully Drilling; and 4) the decision not to remove BH–34 when OSM ceased actively monitoring underground emissions at the project site.

The initial focus of the United State's argument was the discretionary nature of the

decision selecting the location of BH–34. Emphasizing that the location chosen was the one judged by professionals to be readily accessible yet most likely to yield useful data on the fire, the government argued that their determination was clearly a discretionary one. (See: Record Document No. 16, exhibit "C", paras. 11–13) OSM Field Office Supervisor David Simpson states in his affidavit that "No BOM [7] or OSM rules or regulations were violated in the placement of boreholes and standpipes, including borehole "S–34", in the said Project." (Record Document No. 16, exhibit "C", para. 16) Plaintiff concedes the discretionary nature of this decision [8] and has shifted the focus of her case to other acts and other decisions.

Plaintiff and Pagnotti Coal argue that OSM's failure to adhere to the terms of its contract with Tully Drilling and with Pagnotti Coal and its negligence in failing to inspect the premises take its conduct outside the scope of the exemption. They argue that: 1) OSM violated the specifications incorporated in its contract with Tully Drilling by failing to ensure placement of a warning device at or near standpipe BH–34; 2) OSM violated its agreement with Pagnotti Coal by failing to return the premises to substantially their original condition by removing standpipe BH–34 when its monitoring efforts ceased in 1983; and 3) OSM voluntarily undertook the obligation to inspect and maintain standpipes installed on the project site, which it performed negligently.

*Alleged violation of contractual obligation*

Plaintiff and Pagnotti Coal argue that the United States violated two contract provisions: one, stated in its agreement with Pagnotti Coal, which requires it to return the premises to substantially their original condition, and the other stated in its contract with Tully Drilling which required Tully Drilling to install "double blinking warning markers" at boreholes "receiving special caps on public street, (sic) highways, pedestrian walkways, and as may be directed." (Record Document No. 16, exhibit "F", p. 7) [9]

---

7. BOM refers the United States Bureau of Mines.

8. See: Plaintiff's opposing brief, record document no. 25, pp. 4 and 9.

9. The preceding paragraph states:
 As directed by the FR, the contractor shall furnish and install the caps per the attached Figures 5 and 6. the caps shall remain install-

Plaintiff and Pagnotti argue that the agreement to return the premises to their pre-existing condition implied an obligation on the part of the United States to remove standpipe BH–34 when OSM's involvement with the project ceased.[10] The United States counters by stating that it was never the parties' intention that this requirement be construed to imply an obligation to remove standpipes as it was understood by all concerned that once installed, the standpipes would be left in place so that monitoring of the underground fire could continue long-term.

 Under Pennsylvania law,[11] the interpretation of the parties' intent in entering into a contract is a question of law for the court to determine if the writing is not ambiguous, i.e. is not subject to more than one reasonable interpretation. *Ram Construction Co., Inc. v. American States Insurance Co.*, 749 F.2d 1049, 1052–53 (3d Cir.1984). The stated obligation to return the premises to their original condition is not ambiguous. It is susceptible of only one reasonable interpretation.

We agree with the government on this issue. Had the parties contemplated removal of all 189 standpipes it is reasonable to assume that the agreement would have spelled out the government's obligation to perform such a significant undertaking. Likewise, if certain standpipes but not others were to be removed, the agreement would certainly have specified those to be removed. There is no mention of such an obligation, only the obligation which Pagnotti and plaintiff now seek to imply from the general statement that the premises will be returned substantially to their original condition.

Pagnotti's inaction on this matter is also a telling indicator of the parties' intent. If it had considered the government's failure to remove the 189 standpipes installed on its property a breach of the 1979 release agreement, it most likely would have taken some action long before this to have that breach remedied. We find it hard to believe that Pagnotti was unaware that the standpipes were still on its property until decedent's accident, since PaDER continues to use the standpipes to monitor the fire.

 Even if we were convinced that the contract required the removal of standpipe

---

ed for the duration of the project and shall become the Government's property.
(Record Document No. 16, exhibit "F", p. 7)
An earlier paragraph assigns obligation to pay for the markers to the contractor; it provides:
The contractor shall furnish blinking warning markers when needed at the contractor's expense.
(Record Document No. 16, exhibit "F", p. 4)

10. The clause states in its entirety:
Upon completion of the work to be performed for the control or extinguishment of the fire the land shall be restored to substantially the condition existing prior to the performance of work, except for changes, alterations, and deviations required and deemed necessary and proper for the successful performance of the work. Property damaged or destroyed as a result of, or incident to, operations or work performed, shall be repaired, restored, or replaced, including but not limited to structures, buildings, fences, sidewalks, driveways, and landscaping, which may have been removed or damaged by or as a result of the work; provided, this obligation to restore, repair, or replace shall not extend to any damage to the land, buildings, or improvements that would, or might, have occurred if the work had not been performed, including but not be limited to,

subsidence, caving, damage by fire, or damage due to escape of presence of noxious or poisonous fumes or gases, and whether occurring before, during, or after the performance of the work.
(Record Document No. 16, exhibit "E", para. 3)

11. Pennsylvania law clearly governs disposition of this case and the issues it presents. Under the FTCA, the law of the forum state, in this case, Pennsylvania, governs. *Rodriguez v. United States*, 823 F.2d 735, 739 (3d Cir.1987) and 28 U.S.C. § 2674.

To the extent that the contract issues are governed by choice-of law rules, Pennsylvania law governs under that analysis as well. Choice-of-law decisions are governed by the choice-of-law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In this instance, Pennsylvania choice-of-law rules require application of Pennsylvania law. *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964). The events relative to Tully's contract with OSM took place in Pennsylvania. The contract was entered into here, Tully Drilling is a Pennsylvania corporation, and the work was to be performed here. No other state has any contact with the events giving rise to either this action or the state court action. *Id.*

BH–34, we are not convinced that this would be sufficient, by itself, to take the government's conduct outside the discretionary exception. All cases cited by the parties on this issue refer to the violation of a statute or regulation. See, e.g. *Berkovitz, supra.* We have seen nothing which suggests that breach of a contract with a private party has the same significance and effect, and we perceive no rational basis for extending the rule to encompass such conduct. Breach of a contractual obligation owed to a private party, voluntarily assumed, is not in the same category as the violation of statutes, regulations or mandatory guidelines imposed on an agency by a legislative or rule-making body.

The opposing parties' second contractual argument centers on a provision in OSM's contract with Tully Drilling which required it to install flashing lights on standpipes installed on public roads and walkways.

It is undisputed that BH–34 had no blinking lights or warning devices of any kind affixed to it. (See: Record Document No. 26, para. 4 and exhibit 3, United States' response to plaintiff's interrogatories, question 6). Undisputed facts also establish that the road on which standpipe BH–34 is located is not a "public road". Plaintiff concedes as much in her amended complaint, in which she describes the road on which Korn was travelling as an abandoned stripmining road. Plaintiff restates this as a fact in her counter-statement of material facts. She states: "At the time of the accident, the stripmine located on Pagnotti Coal Company's property was no longer in use and had been closed for some time." (Record Document No. 26, para. 2)

The road was on property owned by Pagnotti Coal, private property. An abandoned road on private property is not a public thoroughfare, and thus under the express terms of the contract, installation of warning devices on standpipes located on it was not required.

■ The decision not to require installation of blinking lights on standpipes not located on public roads was a discretionary one. In making that decision, government employees struck a balance between safety concerns and budgetary constraints, and the efficient allocation of resources. They decided to have warning devices installed on standpipes located on roads and walkways frequented by the public, but not in areas not frequented by the general public. The reasonableness of that decision is not at issue. The only issue before us is whether that decision was a discretionary one, and therefore not subject to challenge in an FTCA action. We find that it was. Plaintiff bears the burden of proving jurisdiction, and she has not pointed to any facts which show the decision not to require warning devices in non-public areas to be other than a discretionary one. See, e.g. *Boyd v. United States,* 881 F.2d 895 (10th Cir.1989) (Army Corps of Engineers decision not to zone a portion of a lake for swimming held discretionary, because it required government officials "to strike a balance between public safety, including the amount of funds to expend in promoting that objective, and recreational use")

■ The opposing parties' only contention on this issue goes to the question of negligence, not to the question of the character of the decision. Plaintiff and Pagnotti argue that a warning should have been erected at BH–34 because it was well known in the area that teenagers used the area for underage drinking and local police even patrolled the road on the look-out for persons in the area for just such purposes.[12] This assertion has no bearing on the issue before

12. Plaintiff states in her counter-statement of material facts:
.... The Pagnotti Coal property was, however, used and travelled by persons living in the Byrnesville, Columbia County, area. In particularly (sic), the Pagnotti Coal Company property was used by teenagers engaging in underage drinking and by certain members of the community as a dumping ground for trash and other refuse materials.... Because of the public's use of the Pagnotti Coal Company property, local law enforcement agency (sic) regularly patrolled the area.
(Record Document No. 26, para. 2)
Pagnotti Coal states in its response to plaintiff's interrogatories that "No Trespassing" signs were posted at all entrances to the property. (Record Document No. 26, exhibit 3, Pagnotti Coal's responses to plaintiff's interrogatories, question 6)

the court. Conditions existing long after installation of the standpipe and approximately eight years after the government pulled out of the project have no bearing on the character of its decisions made in 1983, or before.

Plaintiff and Pagnotti argue that the failure to erect a warning device is not defensible as a policy decision and takes OSM's conduct outside the discretionary function exemption.

OSM argues that uncontroverted affidavits and documents establish that it delegated the installation of safety devices to Tully Drilling and that its decision to do so was a discretionary one exempt from judicial review under the FTCA.

Courts have held the decision to delegate responsibility for safety measures to be a discretionary determination exempt from review, particularly in cases in which the decision-maker balanced concern for public safety against staffing, efficiency, budgetary, operational and administrative limitations. See: *United States v. S.A. Empresa de Viacao Aerea Rio Grandense, (Varig Airlines)*, 467 U.S. 797, 820, 104 S.Ct. 2755, 2767, 81 L.Ed.2d 660 (1984).

 The decision not to install warning devices or post warning signs can be discretionary if government employees weigh competing considerations in making that determination, or if that decision is a component of a larger policy decision. In *Zumwalt v. United States*, 928 F.2d 951, 955 (10th Cir. 1991), for example, the Tenth Circuit held that United States Park Services' failure to post warning signs on a wilderness trail was related to a policy decision to preserve the wilderness setting in its natural state for the benefit of park visitors, and was, therefore, discretionary. Similarly, in *Johnson, supra*, 949 F.2d at 340, the court held that decisions made by Park Service employees in the course of conducting a search and rescue mission for plaintiff's decedent were discretionary in that they required the park rangers to balance competing policy consider-

ations. See also: *Miller v. United States*, 710 F.2d 656, 665 (10th Cir.) (claim of failure to warn of hazardous highway condition barred under the discretionary function exception because highway construction process was infused with a "welter of public policy considerations"), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983). Cf. *Boyd, supra*, (Army Corps of Engineers decision to zone a portion of a federally controlled lake "nonswimming" was a policy decision but its decision not to post warning signs in that area was not—alleged failure to warn not shown to be part of the discretionary zoning decision—"[T]he government's failure to warn was not connected to the policy decision which created the hazard.")

### Decision to delegate

 The decision to delegate responsibility for safety measures can, likewise, be discretionary if the decision-maker balanced competing considerations. See: *United States v. S.A. Empresa de Viacao Aerea Rio Grandense, (Varig Airlines)*, *supra*. Here, the decision to delegate responsibility for installing signs and warning devices was a discretionary one for the same reason the decision to require installation of such devices on standpipes in private areas is of the same character.

### Voluntary assumption of an obligation

Plaintiff argues that the federal government undertook an obligation to ensure the safe installation and maintenance of the Centralia project standpipes, and that it breached that obligation by failing to make certain that warning or safety devices were installed or maintained at standpipe BH–34.[13] The government concedes that no maintenance or repair work was performed on BH S–34 by OSM. (Record Document No. 26, exhibit 3, United States' response to plaintiff's interrogatories, question 4).

 It is true that if the government undertakes a duty to inspect or warn, it is liable for the consequences if that obligation

---

13. Plaintiff states in her counter-statement of material facts:

.... The Government performed no maintenance work, repair work, or inspections of the

standpipe alleged to have caused the accident, from the time of its installation until the time of the accident.
(Record Document No. 26, para. 5)

is performed negligently. See: *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (negligent failure to maintain a lighthouse in good working order subjected government to suit under the FTCA even though the initial decision to undertake and maintain lighthouse service was a discretionary policy judgment).

■ Here, not only is there nothing to suggest that the government undertook such an obligation, there is evidence to the contrary. As evidence of such an undertaking, the opposing parties point to a clause in OSM's agreement with Pagnotti which states that Pagnotti will refrain from activities which will disturb the project or cause it to be disturbed, without first receiving permission from the federal government.

■ There is absolutely no basis for expanding a non-interference clause into an assumption of an obligation to make and keep the premises safe. There is nothing whatsoever to suggest that the inclusion of that clause was intended to signify OSM's undertaking of an obligation to inspect or maintain the premises, much less one that extended eight years after its involvement with the project ended. Agreements are not presumed to extend into perpetuity. If no term is stated, it is assumed that the parties intended the contract to remain in force for a reasonable period of time or until such time as their objectives could be accomplished.

To accept opposing parties' argument that the government had a duty to inspect or maintain, we would have to imply an obligation to inspect the premises in perpetuity for defects and safety hazards. No basis exists for imposing such an extraordinary obligation on OSM.

■ In addition, the terms of OSM's contract with Tully Drilling run counter to the opposing parties' assertion. The government delegated responsibility for installation of warning devices to Tully Drilling. Even if OSM had an obligation to inspect the work performed by Tully Drilling to see that it was done correctly, that obligation was fulfilled. The work performed conformed to contract specifications without the installation of a warning device on standpipe BH–34, because,

as discussed above, the contract did not require installation of warning devices on standpipes located on non-public roads.

*Request for additional time*

As stated above, plaintiff asked for additional time to conduct discovery only if the court disposed of defendant's motion on summary judgment grounds. We disposed of the motion on jurisdictional grounds, and plaintiff did not request additional time to respond to the jurisdictional aspects of defendant's motion.

■ In any event, the grant of additional time for discovery would serve no useful purpose. There are no material issues of fact. It is clear as a matter of law that the discretionary function exemption applies to all conduct which arguably could be the basis for a cause of action against the United States under the FTCA. In addition, the only issue on which plaintiff focuses her discovery request in particular is the existence of an alleged mandatory duty on the part of government employees to install a warning device on standpipe BH–34. That duty depends on the existence of a statute or regulation requiring such a device, issues which are a matter of legal research, not discovery. The existence or non-existence of a legal duty can be States or access to its records on the project. Federal statutes and regulations are equally accessible to both sides.

*Remaining state law claims*

The claim asserted under the FTCA is the only federally based claim. In addition to that claim, plaintiff asserts state law claims for the death of Korn. Plaintiff's state law claims will be dismissed for lack of subject matter jurisdiction under *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). We decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, since only state-based claims remain.

Plaintiff's state-law claims will be dismissed without prejudice, such that plaintiff will not be barred by any ruling of this court from pursuing either claim in state court.

We make no judgment or assessment on the merit of those claims.

 * * *

An order will be entered consistent with this opinion.