Heather **HARTMAN** and Joanne Hartman, Plaintiffs,

v.

**BETHANY COLLEGE,** Defendant.

**Civ. A. No. 89–0017–W(S).**

United States District Court, N.D. West Virginia.

April 23, 1991.

Arthur L. Jenkins, Jr., Norristown, Pa., Paul J. Harris, Martinsburg, W.Va., for plaintiffs.

Avrum Levicoff, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

STAMP, District Judge.

This action arises out of the assault of Heather Hartman by two men whom she met while drinking at Bubba's Bison Inn on the night of September 25, 1987. Plaintiffs have sued Bethany College alleging that the College's negligence was the proximate cause of Heather Hartman's injuries. Bethany has denied acting negligently. The issues now before the Court are whether defendant breached any of the duties it owed Heather Hartman and whether Bethany stood *in loco parentis* to Heather Hartman. The Court answers both ques-

tions in the negative and, accordingly, GRANTS defendant's motion for summary judgment.

### I. Background

Plaintiffs Heather Hartman and Joanne Hartman, in her own right and as parent and natural guardian of Heather Hartman, filed this action in the United States District Court for the Northern District of West Virginia on March 20, 1989, seeking compensatory damages from defendant Bethany College, a four-year private institution of higher education in Bethany, West Virginia. Plaintiffs allege that the agents, servants, and employees of Bethany College were negligent toward Heather Hartman in that they failed to exercise the duties and obligations of one standing *in loco parentis* to a minor; failed to adequately supervise the activities of Heather Hartman; failed to advise Heather Hartman of the laws, codes, and regulations of the State of West Virginia; failed to warn Heather Hartman of the unlawfulness and dangers of her activities at Bubba's Bison Inn; failed to maintain a safe environment for Heather Hartman; and failed to exercise due care under the circumstances.

Defendant denies that it stood *in loco parentis* to Heather Hartman. Defendant further denies breaching any duty it owed to Heather Hartman and states that Heather Hartman assumed the risk of the injuries alleged in the complaint and was contributorily negligent in excess of any negligence upon Bethany College's part. Defendant denies all liability for plaintiffs' injuries.

The Court's jurisdiction over these claims is grounded in 28 U.S.C. § 1332, diversity of citizenship.

Defendant filed its answer to plaintiffs' complaint on December 8, 1989. On July 5, 1990, defendant filed a Motion for Summary Judgment with an accompanying memorandum of law. Plaintiffs filed a response brief to defendant's motion on July 27, 1990. Defendant filed its reply brief on August 7, 1990.

On March 15, 1991, this Court ordered plaintiffs to provide evidence that at the

time of the incident giving rise to this cause of action, Bubba's Bison Inn was owned, leased, operated or controlled by Bethany College. Plaintiffs submitted a supplemental affidavit in response to the Order of this Court on March 28, 1991.

## II. Uncontested Material Facts

During the evening hours of September 25, 1987, Heather Hartman, a seventeen year old freshman at Bethany College, walked from her dormitory room on the Bethany College campus to Bubba's Bison Inn, which is located near the college in the small college town of Bethany. Bubba's Bison Inn is a bar attracting Bethany students and faculty, which displays Bethany College memorabilia and is named after the College's mascot. Hartman gained admission to Bubba's Bison Inn by displaying her Bethany student identification card.

Hartman, who knew that West Virginia's drinking age was twenty-one, drank part of one beer while socializing with friends before leaving Bubba's Bison Inn. Shortly after leaving, Hartman returned to Bubba's Bison Inn. Sometime after returning, Hartman was introduced to Jim Pearson and Todd VanDyke, two men seated at the bar. Pearson bought Hartman a beer and later a shot of Jack Daniels while the two engaged in conversation. After approximately one hour, Pearson and Hartman left the bar and went to Pearson's car. VanDyke joined Pearson and Hartman in the car, whereupon Hartman was taken to VanDyke's house, where she was assaulted by both men.

## III. Rule 56 Standards

[1] Under Fed.R.Civ.P. Rule 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." The defendant seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Fed.R.Civ.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "Rule 56(c) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. at 2514. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

In *Celotex*, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *Oksanen v. Page Memorial Hospital*, 912 F.2d 73, 78 (4th Cir.1990). In reviewing the supported underlying facts, however, all inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Defendant has attached deposition testimony and documentary evidence to its brief supporting the facts alleged therein. Plaintiffs have supplemented the factual assertions in their brief with a supporting affidavit. No discovery requests are outstanding.

## IV. Whether There Is Any Issue of Material Fact That Would Preclude a Grant of Summary Judgment in Favor of Bethany College

The primary question that this Court must address is whether any disputed is-

sues as to material fact exist that must be decided by the finder of fact before the relevant law can be applied. After a review of all materials now before it, the Court concludes that no materially factual issues in dispute exist so as to survive defendant's Motion for Summary Judgment. The only questions remaining in the case are wholly questions of law, which this Court can and must resolve at this stage of the case. The Court concludes that Defendant Bethany College is entitled to summary judgment.

A. There Is No Genuine Issue of Material Fact as to Who Owned, Leased, Operated and Controlled Bubba's Bison Inn

Defendant states in its memorandum in support of its motion for summary judgment that Bubba's Bison Inn was located off the Bethany College campus. In his affidavit, Robert A. Sandercox, Senior Vice President of Bethany College, states that on September 25, 1987, Bubba's Bison Inn was not owned, operated or controlled by Bethany College and was not on property that was owned, operated or controlled by Bethany College. Plaintiffs, both in their response brief to defendant's motion for summary judgment and in the affidavit of Heather Hartman, state that Bubba's Bison Inn was located on the campus of Bethany College. Plaintiffs agree with defendant that on September 25, 1987, Bubba's Bison Inn was owned and operated by William Reid, a former employee of Bethany College.

On March 15, 1991, this Court entered an Order requiring plaintiffs to provide evidence that on September 25, 1987, Bubba's Bison Inn was owned, leased, operated or controlled by defendant. The Court stated that failure to comply with the Order would constitute an admission that Bethany College did not own, lease, operate or control Bubba's Bison Inn. Plaintiffs filed a supplemental affidavit on March 28, 1991, in which Heather Hartman states that "at the time of the incident[,] the building was owned either legally or beneficially by William 'Bubba' Reid who ... was not employed by Bethany College." Nowhere in the supplemental affidavit does Hartman

affirmatively state that Bethany College owned, leased, operated or controlled Bubba's Bison Inn nor has any documentary evidence to that effect been presented.

■ As the Supreme Court explained in *Anderson,* the Court must perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." 477 U.S. at 250, 106 S.Ct. at 2511. In this case, there simply is not a genuine issue of material fact that can only be resolved by a finder of fact. Either Bethany College owned, leased, operated or controlled Bubba's Bison Inn or it did not. This Court would not be properly or efficiently performing its adjudicatory role if it were to find that an issue of fact exists as to the location of Bubba's Bison Inn when defendant has presented Vice President Sandercox's affidavit stating that Bethany did not own, lease, operate or control Bubba's Bison Inn or the land on which it stands and Hartman has not, in her affidavit, contradicted the statements of Sandercox.

Based upon the affidavits of Vice President Sandercox and Heather Hartman, and upon the memoranda of law filed in this action, the Court finds that there is no genuine issue of material fact as to whether Bethany College owned, leased, operated or controlled Bubba's Bison Inn or the land upon which it is located. Bethany College did not own, lease, operate or control Bubba's Bison Inn on September 27, 1987, nor did Bethany College own, lease, operate or control the real estate constituting Bubba's Bison Inn. Webster's Dictionary defines "campus" as "the grounds and buildings of a university, college, or school." Webster's Ninth New Collegiate Dictionary 200 (1983). Applying this definition to the facts of this case, the Court can only conclude that Bubba's Bison Inn was not on the Bethany College campus, and therefore, this is not a genuine issue of material fact for a jury to consider.

**B. There Is No Genuine Issue of Material Fact as to Whether Defendant Violated an Affirmative Duty to Hartman**

■ Plaintiffs seek damages from defendant for its alleged negligence. To establish a cause of action in negligence, the complainant must first show that the alleged tortfeasor was under "[a] duty, or obligation, recognized by law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." W. Prosser & W. Keeton, The Law of Torts § 30 (5th ed. 1984); *see also Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563, 567 (1983); *Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703, 706 (1981); Restatement (Second) of Torts § 281 (1965). Plaintiffs have alleged that Bethany College failed to adequately supervise the activities of Heather Hartman, failed to advise her of the laws of the State of West Virginia, failed to warn her of the unlawfulness and dangers of her activities at Bubba's Bison Inn, failed to maintain a safe environment for her, and failed to exercise due care under the circumstances. Plaintiffs also allege that Bethany College was negligent toward Heather Hartman in that it failed to exercise the duties and obligations of one standing *in loco parentis* to a minor. The Court will address plaintiffs' allegations separately.

*1. Bethany College did not breach any duty to supervise, advise, warn, maintain a safe environment for or exercise due care over Heather Hartman*

■ A college has a general obligation to its students to maintain a campus environment free of foreseeable harm. *See Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983) (holding that college had a duty to protect a female student abducted from her campus dormitory and assaulted in another campus building); *Shannon v. Washington University*, 575 S.W.2d 235 (Mo.App.1978) (holding college liable for injuries resulting from fall on sidewalk on university grounds); *Miller v. State*, 62 N.Y.2d 506, 478 N.Y.S.2d 829, 467 N.E.2d 493 (1984) (holding college liable for

rape of student occurring in dorm room); *Brown v. North Carolina Wesleyan College*, 65 N.C.App. 579, 309 S.E.2d 701, 703 (1983) (noting that college can be liable for criminal assault by third party upon student under certain circumstances). This general obligation, however, has not been extended to non-curricular activities taking place beyond campus boundaries. *E.g. Beach v. University of Utah*, 726 P.2d 413 (Utah 1986) (holding university not liable for injuries suffered by student while on field trip); *Baldwin v. Zoradi*, 123 Cal. App.3d 275, 176 Cal.Rptr. 809 (Cal.App. 1981) (holding university not liable for injuries suffered while engaged in speed contest off campus). Additionally, the courts generally have not imposed liability even upon elementary and secondary schools when a student was injured off school property. *See Chavez v. Tolleson Elementary School District*, 122 Ariz. 472, 595 P.2d 1017 (Ariz.App.1979) (holding as a matter of law that school was not liable for damages when student was slain after leaving school property); *St. Pierre v. Lombard*, 512 So.2d 1206 (La.App.1987) (holding that high school was not liable to student who was attacked at leased stadium).

■ Heather Hartman was assaulted by two men off the Bethany College campus. She was off-campus when she met the men and did not return to the campus before she was taken to VanDyke's house and assaulted. Neither man was a Bethany student or had an official relationship with Bethany. It would not be consistent with the caselaw in this area to impose a duty upon colleges to supervise their students when they leave the college campus for non-curricular activities. It would also not be consistent with the settled expectations of students, parents or colleges. "A dramatic reapportionment of responsibilities and social interests of general security took place [beginning in the late 1960s]. Regulation by the college of student life on and off campus has become limited. Adult students now demand and receive expanded rights of privacy in their college life including, for example, liberal, if not unlim-

ited, partial visiting hours. College administrators no longer control the broad arena of general morals." *Bradshaw v. Rawlings,* 612 F.2d 135, 139–140 (3rd Cir.1979); *see also* Deposition of Heather Hartman at 9 (stating she never asked permission to leave campus). Bethany had no duty to supervise Heather Hartman when she left the college campus for Bubba's Bison Inn. Bethany College did not breach a duty to supervise Heather Hartman.

The Court can find no cases in which a college has been required to advise its students of the laws of the state in which the school was located. In any event, Heather Hartman admitted in her deposition that she was aware that West Virginia's drinking age was twenty-one, which would make it impossible for any failure to warn to be the proximate cause of Hartman's injuries. Deposition of Heather Hartman at 24. As this Court noted above, it is simply not practical to require a college to supervise the activities of its students beyond campus boundaries. A college has neither the staff nor the resources necessary for such a herculean task. *See Beach,* 726 P.2d at 419. Students do not expect the college to lead them through their college years protected from the outside world and indeed would resent such protection if it were imposed upon them.

 There is no evidence that Bethany was aware of any incidents similar to the assault on Heather Hartman that would have put it on notice of the dangers to its students from their patronage of Bubba's Bison Inn. *See North Carolina Wesleyan,* 309 S.E.2d at 703 (holding that foreseeability of a criminal assault determines a college's duty to safeguard its students from the acts of third persons); *Mortiboys v. St. Michael's College,* 478 F.2d 196, 197 (2d Cir.1973) (holding college not liable for injuries suffered as result of fall on lump in skating pond where there was no evidence that college had notice of lump). In any event, Bethany had no obligation to warn its students of the dangers of their non-curricular activities when the school neither supported nor condoned such activities. No duty is imposed at law upon a

West Virginia college to advise its students of the laws, codes, and regulations of the state or of unforeseeable dangers from their off-campus activities. Bethany did not breach a duty to advise Heather Hartman of state law or to warn her of the dangerousness and unlawfulness of her activities.

 Bubba's Bison Inn was located off the Bethany College campus. Bubba's Bison Inn and the real property constituting that bar were not owned, operated, leased or controlled by Bethany College. Bethany cannot be held liable for failing to maintain a safe environment for Heather Hartman when the only evidence of an unsafe environment is the serving of alcoholic beverages at Bubba's Bison Inn and inadequate supervision of Bubba's parking lot, a facility which Bethany College did not own, operate, lease or control. A party cannot be held responsible for the negligence of another over which the party has no power to foresee or control. *See Gallagher v. Waynesboro Mutual Telephone Company,* 143 Va. 383, 130 S.E. 232 (1925); cf. *Thomas v. Raleigh General Hospital,* 358 S.E.2d 222 (W.Va.1987) (holding that party may be liable when it exercises control over negligent actor). Bethany was not obligated at law to maintain a safe environment beyond its campus boundaries. There is no evidence that Bethany failed to maintain a safe environment on its campus such as to lead to the assault upon Heather Hartman. Therefore, Bethany did not breach a duty to maintain a safe environment for Heather Hartman.

 An obligation to exercise due care under the circumstances does not arise absent a duty at law to protect others against unreasonable risks. W. Prosser & W. Keeton, The Law of Torts § 30 (5th ed. 1984). Bethany did not have a duty to protect Heather Hartman when she left the college campus and engaged in an illegal non-curricular activity at Bubba's Bison Inn. *See Beach,* 726 P.2d at 415 ("Absent unusual circumstances which justify imposing such an affirmative responsibility, 'one has no duty to look after the safety of another who has become voluntarily intoxi-

cated and thus limited his ability to protect himself.' ") (quoting *Benally v. Robinson*, 14 Utah 2d 6, 376 P.2d 388, 390 (1962)); *supra* at 291–292 (noting that students neither expect nor desire constant college supervision, especially beyond college boundaries). Bethany may have had a duty to exercise due care as long as Hartman remained on campus, or even if she left campus for a required curricular event, but such a duty should not be extended to a student's non-curricular activities beyond school boundaries. Bethany had no obligation to exercise due care over the specific circumstances that led to Hartman's injuries. So, Bethany did not breach a duty to exercise due care over Hartman under the circumstances.

Plaintiffs' claims that defendant breached a duty to adequately supervise, advise, warn, maintain a safe environment for, and exercise due care under the circumstances over Heather Hartman are not adequately supported by factual assertions such as to survive defendant's motion for summary judgment. Bethany did not breach the ordinary duties of a school to its students and so, under the principles of common law, plaintiffs have not established that Bethany College was negligent. Defendant's motion for summary judgment on the ground that plaintiffs have not alleged sufficient facts to establish that defendant breached its ordinary duty must be granted.

*2. Bethany College did not stand in loco parentis to Heather Hartman and therefore owed her no heightened duties*

Plaintiffs make a second argument in response to defendant's motion for summary judgment. They argue that the doctrine of *in loco parentis* applied to the relationship between Bethany College and Heather Hartman and that Bethany breached the heightened duties it owed Hartman under this doctrine. Bethany argues that no *in loco parentis* relationship exists between colleges and their students and that summary judgment should be entered in its favor as a matter of law. This

Court finds that defendant correctly states the law and therefore is entitled to summary judgment.

The recent trend in the caselaw is against finding an *in loco parentis* relationship between colleges or universities and their students. *See* generally Annotation, *Tort Liability of College or University for Injury Suffered by Student as a Result of Own or Fellow Student's Intoxication*, 62 A.L.R.4th 81, 83 (1988) (stating that "courts often reason that college administrators and faculties do not assume a role in loco parentis"). The seminal case in the area, *Bradshaw v. Rawlings*, 612 F.2d 135, 138–140 (3d Cir.1979), held as a matter of law that a college did not stand *in loco parentis* to an eighteen year old student who was severely injured when an automobile driven by a fellow student struck a parked car as the students were returning to the college from a class picnic. Virtually all cases decided since *Bradshaw* agree with the decision in the case. *E.g. Baldwin v. Zoradi*, 123 Cal.App.3d 275, 281–282, 176 Cal.Rptr. 809, 813 (Cal.App.1981); *Campbell v. Wabash College*, 495 N.E.2d 227, 232 (Ind.App.1986); *Eiseman v. State*, 70 N.Y.2d 175, 181, 518 N.Y.S.2d 608, 615, 511 N.E.2d 1128, 1136 (1987); *Beach v. University of Utah*, 726 P.2d 413, 416, 418 (Utah 1986). As plaintiffs point out, however, all of these cases involved students eighteen years of age or older. This case then, represents an opportunity to consider the question of whether a college has an *in loco parentis* relationship with its minor students.

Plaintiffs point to West Virginia Code § 18A–5–1 and *Smith v. West Virginia State Board of Education*, 170 W.Va. 593, 295 S.E.2d 680 (1982), in support of their assertion that West Virginia would recognize the doctrine of *in loco parentis* between colleges and their seventeen year old students. Under West Virginia Code § 18A–5–1, "[t]he teacher shall stand in the place of the parent or guardian in exercising authority over the school, and shall have control of all pupils enrolled in the school from the time they reach the school until they have returned to their respective homes." The West Virginia Supreme

Court of Appeals held in *Smith* that § 18A–5–1 extended the common law doctrine of *in loco parentis* to the relationship between an elementary school principal and student. *Smith*, 295 S.E.2d at 684. Plaintiffs attempt to extend the *Smith* holding to the case now pending before the Court.

The exact language of the statute in question is always most important in attempting to learn the legislature's intent in passing a law. Looking at the definition section of Titles 18 and 18A, "teacher" is defined as a "professional educator" under West Virginia Code § 18A–1–1. "Professional educators", a subsection of "professional personnel", are "all personnel employed by a county board of education." *Id.* West Virginia's public colleges and universities are not controlled by the county boards of education. Rather, the university system in West Virginia is controlled by a Board of Trustees and the state college system is governed by a Board of Directors.[1] By the statute's explicitly defined terms, then, the legislature did not intend to extend the *in loco parentis* protections of West Virginia Code § 18A–5–1 to the relationship between students and personnel at institutions of higher education. The statute makes no distinction as to the ages of students that will be covered by the statute. It is not inconceivable that the Supreme Court of Appeals would extend the doctrine under West Virginia Code § 18A–5–1 to an eighteen year old high school student, even though the student is legally an adult. It is not reasonable, however, to conclude that the Supreme Court of Appeals would extend the protection of § 18A–5–1 to college students as the statutory language simply would not support such a finding. West Virginia Code § 18A–5–1, as interpreted by the Supreme Court of Appeals in *Smith*, does not support a finding that West Virginia law confers an *in loco parentis* relationship between colleges and their students, regardless of the students' ages. Plaintiffs' argu-

ment in opposition to defendant's motion for summary judgment is not supported by statutory authority or caselaw.

As the West Virginia Supreme Court of Appeals noted, "the courts have historically shaped ... the common law concept [of *in loco parentis* ]." *Smith*, 295 S.E.2d at 684. The concept has been shaped based upon the societal realities of the time. A crucial element behind imposition of *in loco parentis* status is the conclusion that certain individuals require parental protection and supervision even when a parent is not present. As this Court has already discussed, parents and students do not expect colleges to play a role as surrogate parents. See *supra* at 291, 292. "College students today are no longer minors; they are now regarded as adults in almost every phase of community life." *Bradshaw*, 612 F.2d at 139. It is not reasonable to conclude today that seventeen year old college students necessarily require parental protection and supervision. If they did, society might place many more limitations upon the ability of a minor to attend college than currently exist. A college freshman is just that; whatever his or her age. A college does not stand *in loco parentis* to its seventeen year old college freshmen.

As further evidence of society's increasing willingness to treat seventeen year olds as adults, the Supreme Court held in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), that the eighth amendment does not forbid sentencing a seventeen year old defendant to death, highlighting the blurring of the line between status as a child and status as an adult at law in even the most critical questions of life and death. It is not uncommon in this state for a seventeen year old defendant who is alleged to have committed a crime to be tried as an adult in spite of the fact that the defendant technically is a child at law. *See* West Virginia Code § 49–5–10. The legal wall between a seventeen year old and an eighteen year old is in-

1. While Bethany College is a private institution of higher learning not a part of the West Virginia University System, Bethany is, of course, much more akin to West Virginia University and other public colleges and universities than it is to an elementary or secondary school. Further, the fact that Bethany is private makes an even stronger case against applying West Virginia Code § 18A–5–1, which speaks only in terms of public institutions.

creasingly porous as society, and the courts that reflect society, are increasingly willing to give seventeen year olds both the benefits and the burdens of adulthood.

The decided cases from all jurisdictions reflect a strong trend in this nation against imposing an *in loco parentis* relationship between colleges and their students. West Virginia Code § 18A–5–1 does not confer *in loco parentis* status between colleges and students nor, in this Court's opinion, would the West Virginia Supreme Court of Appeals construe it in such a fashion if faced with this question. Seventeen year old college freshmen neither require nor expect colleges to act as surrogate parents. A college owes a general duty to its students to maintain a campus free of foreseeable harm. However, the law does not impose a duty upon colleges to guarantee the safety of students leaving campus.

 Based upon all of the factors analyzed above, and based upon this Court's conclusion that *Bradford* accurately states the law not only of Pennsylvania but also of West Virginia, the Court finds as a matter of law that no *in loco parentis* relationship exists between a seventeen year old college freshman and her institution of higher learning. Because no *in loco parentis* relationship exists, the college owes its seventeen year old students no heightened duty beyond its general duties against negligent conduct. Bethany College did not stand *in loco parentis* to Heather Hartman and therefore owed her no heightened duties. Defendant's motion for summary judgment on the ground that it did not have an *in loco parentis* relationship with Heather Hartman must be granted.

### V. Conclusion

The Court finds that there are no genuine issues of fact that would preclude resolving this case as a matter of law. Bethany College did not own, operate, lease or control Bubba's Bison Inn or the real property upon which it was located. Plaintiffs have provided no factual basis for a conclusion that Bethany College breached any duty to supervise, advise, warn, main-

tain a safe environment for or exercise due care over Heather Hartman sufficient to withstand defendant's motion for summary judgment. The Court finds as a matter of law that the doctrine of *in loco parentis* does not apply between a college and seventeen year old college freshmen.

It is hereby ORDERED that defendant Bethany College's motion for summary judgment is GRANTED.